O

# United States District Court
# Central District of California

IMELDA VASQUEZ, on behalf of herself, all others similarly situated,

Plaintiff,

v.

FIRST STUDENT, INC.; FIRST STUDENT MANAGEMENT, LLC; DOES 1–100, inclusive,

Defendants.

Case No. 2:14-CV-06760-ODW(Ex)

**ORDER DENYING MOTION FOR CLASS CERTIFICATION [34]**

## I. INTRODUCTION

Plaintiff Imelda Vasquez, a former bus driver for Defendant First Student, Inc., moves for class certification of five classes of non-exempt employees of Defendant First Student Inc. (ECF No. 34.) Plaintiff asserts that drivers are paid based upon the activities they perform and not the hours worked, and that this activity-based plan does not account for rest breaks as required by California law. Plaintiff also contends that drivers' wage statements did not comply with California law. Defendants First Student Inc. and First Student Management, LLC (collectively, "Defendants") argue that too many individual issues predominate and therefore class certification is inappropriate. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion

for Class Certification.[1] (ECF No. 34.)

## II. FACTUAL BACKGROUND

### A. Overview of First Student's California Operations

Defendant First Student is a transportation company providing school bus services to school districts across the country. (Opp'n 2.) From March 2009 to date, First Student has operated over 40 locations in California, including 32 locations that are currently active. (*Id.*) The California locations provide bus service for both special education students and traditional education students. (*Id.* at 3.) The locations also provide charter services for multiple school districts and organizations such as the YMCA across California. (*Id.*)

Defendants First Student Management, LLC is the legal employer of the drivers who work in First Student's California operations ("Drivers"). (*Id.*) From March 2009 to date, First Student Management has employed over 8,000 Drivers through California. (*Id.*) The number of Drivers employed at any one facility ranges from a dozen to several hundred. (*Id.*)

Most California locations have collective bargaining agreements ("CBAs") covering the Drivers. The CBAs include provisions relating to route assignment, hourly wage rates applicable to time worked by Drivers, and minimum hours guarantees. (*See generally* ECF No. 37.) Some of the CBAs include provisions specifically addressing rest breaks or requiring the employer to follow all applicable provisions of state law. (*See, e.g.*, ECF No. 37, Ex. 5.)

At the time of hire and annually thereafter, Drivers are provided with copies of First Student's National Handbook. (*See* ECF No. 39.) The National Handbook includes general company-wide policies; however, those policies are superseded by any CBA that may be in place at a First Student location. (Opp'n 4.)

/ / /

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

**B. Drivers' Compensation**

Most Drivers drive either a special education or regular school bus "home to school" route. (*Id.*) Some school districts only designate the time a bus is to drop off the students at the school for a route's a.m. run, and the time the bus is to pick up the students at the school for the p.m. run. (*Id.*) In these situations, First Student establishes the pick-up times and locations for the route. (*Id.*) Other school districts set both the arrival times for the schools and the stop locations for the routes, and some even set the time to drive from the yard to the pick-up location and back. (*Id.*) These time points are used to put together both the route schedule and shift schedule for the route. (*Id.*)

Most locations use a daily bus report ("DBR") form on which the route drivers will record the time they pick up the keys at the beginning of their shift and the time they have completed driving the route, conducted the post-trip inspection, and returned the keys to the dispatch office. (*See* ECF No. 39, Ex. 52.) First Student has a general "exception" policy articulated in its National Handbook, where Drivers are to complete an "exception" form if they work more time than their normal scheduled hours. (*See id.*, Exs. 49, 52.) Consistent with this policy, the payroll departments at the California locations examine all applicable time records submitted by Drivers in order to ensure that Drivers are being correctly paid for all time worked. (*See* Sanchez Decl. ¶ 16; ECF No. 38, Exs. 60–82.) All time worked by Drivers is paid at an hourly wage rate. (Opp'n 5.) For each California location, the CBAs describe the different hourly rates. (*See, e.g.*, Vasquez Decl., Ex. A at FSM001641.)

Drivers also have guaranteed minimum hours. Typically, the minimum guarantees are based on whether the driver drives a morning route, a mid-day route, and/or a p.m. route. (Opp'n 6.) Many of the CBAs also have separate minimum guarantees for cover drivers and/or charter drivers. The route assigned to the driver through a bidding process typically determines whether or not a particular driver will receive the guarantee because of the time actually worked by the driver. (*Id.*) There

are also differences between locations with respect to how many drivers receive guaranteed pay for time they are not performing any duties. (*See* Hubbard Decl. ¶ 18 (80 percent of San Jose drivers work less than guarantee); Calhoun Decl. ¶ 13 (60 percent of drivers work less than guarantee); Esber Decl. ¶ 13 (75 percent of the Upland drivers and 60–65 percent of East San Gabriel drivers work less than minimum guarantee).)

**C. Driver's Wage Statements**

FirstGroup America ("FGA"), Defendants' corporate parent in Cincinnati, utilizes a third-party vendor, ADP, to generate wage statements and paychecks/vouchers for employees of FGA-related entities. (Vogt Decl. ¶ 2.) The wage statements and paychecks/vouchers generated by ADP are provided directly by ADP to the locations where the employees work. (*Id.*) The wage statements include required information such as hours worked and hourly rates of pay. (*See* ECF No. 34-7, Albert Decl., Ex. A.)

First Student locations in California are placed into one of four different "pay groups." In October 2012 it came to the attention of Defendants that the ADP wage statements for two of the pay groups did not display the beginning date of the payroll period, despite the fact that FGA had previously asked ADP to make sure that the wage statements for all pay groups in California include that information. (Vogt Dec. ¶ 4.) FGA alerted ADP to the issue and by at least December 2012 all ADP wage statements for the impacted pay groups included the beginning date of the pay period. (*Id.*, Exs. A–B.)

**D. Plaintiff's Employment As A Driver**

Plaintiff was employed as a driver at the Pasadena location from August 2012 until early 2013. (Vasquez Decl. ¶ 3.) At the time she was hired she received both the CBA and location-specific handbook for the Pasadena location. (*Id.* ¶ 5.) Plaintiff drove a special needs route for the Alhambra district from August 31, 2012 until October 12, 2012. (Opp'n 8.) She always worked more hours per day/shift than the

guarantee included in the Pasadena CBA. *Id*. Plaintiff alleges that she was never told that she was paid for rest breaks or that she was entitled to a 10-minute rest break if she worked at least 3½ hours in a day. (Vasquez Decl. ¶¶ 4, 6.) She further claims that her wage statements did not include the beginning date of the pay period or reference to any tasks performed during the pay period. (*Id*. ¶ 7.)

**E. Procedural History**

On March 7, 2013, Plaintiff filed her original class action complaint in Los Angeles Superior Court, alleging causes of action for: (1) failure to pay minimum wages for all hours worked based on allegations of "off-the-clock" work by class members; (2) failure to provide accurate written wage statements based on failure to pay for the alleged "off-the-clock" work; (3) failure to timely pay all final wages based again on the alleged "off-the-clock" work; and (4) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) based on the alleged "off-the-clock" work. (Williams Decl. Ex. 1, "Original Complaint.")

On July 10, 2014, Plaintiff requested leave to file a first amended complaint. Plaintiff sought to add two new causes of action: (1) rest period violations of various California Labor Code sections, including Labor Code § 226.7; and (2) civil penalties pursuant to Labor Code § 2628. (Williams Decl., Ex. 37.) The state court granted Plaintiff's motion to amend on July 31, 2014 and on August 7, 2014, Plaintiff filed her First Amended Complaint ("FAC"). (Williams Decl., Ex. 44.)

On August 28, 2014, Defendants filed their Notice of Removal and removed the First Amended Complaint to this Court. (ECF No. 1.) On October 6, 2014, Plaintiff filed her Motion to Remand. (ECF No. 17.) On December 3, 2014, the Court denied Plaintiff's Motion. (ECF No. 33.)

On December 3, 2014, Plaintiff filed this Motion proposing to certify five classes and subclasses: (1) minimum wage class, (2) rest break class, (3) wage statement class, (4) piece-rate wage statement sub-class, and (5) derivative wage

statement sub-class. Defendants timely opposed (ECF No. 35), and Plaintiff replied (ECF No. 43).

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), a party seeking class certification must initially meet four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Rule 23(b)(3) states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The plaintiff bears the burden of demonstrating that the putative class satisfies each of Rule 23(a)'s elements along with one component of Rule 23(b). *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). In that regard, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

A district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23(a)'s prerequisites. *Id.*; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be

helped." *Dukes*, 131 S. Ct. at 2551. When resolving such factual disputes in the context of a class-certification motion, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982 (holding that a district court must judge the persuasiveness and not merely the admissibility of evidence bearing on class certification). Ultimately the decision to certify a class reposes within the district court's discretion. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## IV. DISCUSSION

### A. Proposed Classes

Plaintiff seeks to certify a (1) minimum wage class, (2) rest break class, (3) wage statement class, (4) piece rate wage statement sub-class, and (5) derivative wage statement sub-class. (Mot. 2–3.)

#### *1. Minimum Wage Class*

The minimum wage class is defined as: "All current and former non-exempt employees of Defendant who were employed by Defendant as Drivers in California at any time from March 7, 2009 until the date of judgment is entered, and who worked at least one workday of 3 ½ hours or more." (Mot. 2.)

The theory of liability underlying the minimum wage class is that Defendants' activity-based pay plan does not account for rest breaks. (Mot. 1.) Labor Code § 226.7 requires employers to provide rest periods to employees in compliance with the applicable California Industrial Welfare Commission ("IWC") Wage Order, in this case being IWC Wage Order No. 9 (Transportation Industry). (Mot. 3.) Section 12(a) of said IWC Wage Order provides that employees who work at least 3 ½ hours per day must be provided with rest breaks:

> The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose

> total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

Cal. Code Regs. tit. 8, § 11090(12)(a).

Plaintiff alleges that Defendants pay drivers based on the work activities they perform. That is, Defendants assign a number of hours or minutes to each task, and pay the driver based on the standard hours rather than the actual amount of time it takes the driver to perform all of his or her tasks. (Mot. 3) Plaintiff argues that there is no payment delineated for the 10-minute paid rest break required by California law, and therefore the drivers are shorted the 10 minutes of paid rest they should have received. (*Id.*)

*2. Rest Break Class*

The proposed rest break class is defined as:

> All current and former non-exempt employees of Defendant who were employed by Defendant as Drivers in California at a location whose collective bargaining agreement did not contain a rest period policy, any time from March 7, 2009 until the date judgment is entered, and who worked at least one workday of 3 ½ hours or more.

(Mot. 2.) Plaintiff contends that Defendants fail to provide rest breaks for many of its drivers because it fails to establish a written rest break policy. Plaintiff alleges that none of the various Handbooks include any rest break policy and out of the approximately 40 locations, 29 are governed by CBAs that do not contain any rest period policy for Drivers. (Mot. 7.) Therefore Defendants fail to authorize and permit rest breaks as to those 29 locations. (*Id.*)

*3. Wage Statement Class and Sub-classes*

Plaintiff contends that Defendants violate Labor Code § 226 in three ways: (1) Defendants fail to include the start date of the pay period on each wage statement; (2) Defendants' activity-based pay plan is a piece-rate plan and therefore requires

Defendants to include piece rate units on each wage statement, which it does not; and (3) Defendants fail to provide rest breaks and pay minimum wage. (Mot. 2.)

The proposed wage statement class is defined as:

> All current and former non-exempt employees of Defendant who were employed by Defendant as Drivers in California at any time from March 7, 2012 until the date judgment is entered, and who were provided by Defendant with at least one wage statement that did not include the inclusive dates of the pay period.

(*Id.*) The proposed piece rate wage statement sub-class is defined as:

> Current and former non-exempt employees of Defendant who were employed by Defendant as Drivers in California at any time from March 7, 2012 until the date judgment is entered, and who were paid under Defendant's activity based payment system and were issued at last one wage statement by Defendant that did not contain the applicable piece rates and/or piece rates earned in the pay period.

(*Id.* at 3.) The proposed derivative wage statement sub-class is defined as: "All Minimum Wage Class and/or Rest Break Class members who were employed by Defendant at any time from March 7, 2012 until final judgment is entered." (*Id.*)

**B. Rule 23(a) Requirements**

As stated above, Rule 23(a) requires that a proposed class meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Defendants only contest the commonality and adequacy requirements for each of the classes. The Court is unpersuaded by Defendants adequacy arguments and finds that the commonality arguments are better addressed in analyzing the predominance requirement of Rule 23(b)(3). The Court finds that Plaintiff has failed to meet the

predominance requirement in Rule 23(b)(3) for all the classes and therefore declines to address the Rule 23(a) requirements.

**C. Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires that the Court find that "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*1. Predominance*

The Supreme Court has held that Rule 23(b)(3)'s predominance inquiry evaluates "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance element is "far more demanding" than Rule 23(a)'s commonality requirement. *Id.* at 624. Under the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, damages must be "capable of measurement on a classwide basis" to establish predominance. 133 S. Ct. 1426, 1433 (2013). Otherwise, questions of "individual damages calculations will inevitably overwhelm questions common to the class." *Id.*

a. Minimum Wage Class

Plaintiff's argument for certifying the minimum wage class hinges on proving that Defendants pay Drivers on a piece-rate pay plan. Plaintiff asserts that under a piece-rate pay plan Defendants are required to separately compensate for rest periods to comply with California minimum wage law. (Mot. 9.) *See Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158, 1168 (E.D. Cal. 2012) (piece-rate pay plan that did not separately pay truck driver for non-driving duties and rest periods violates California law requiring compensation for each hour worked). That is, rest breaks must be specifically delineated as an activity that an employee is compensated for. Plaintiff argues that First Student pays Drivers on a piece-rate plan because it sets "standard" hours or minutes for specific tasks. (Mot. 10.) For example, a driver

might be allocated five hours total for a workday, with a specific number of minutes allocated each to pre-trip inspection, post-trip inspection, fueling, and other duties, including a specific number of hours allocated to driving the route. (*Id.*) Drivers are paid according to this fixed schedule, regardless of how many hours are actually worked, unless the Driver fills out an exception form as described above. (*Id.* at 11.) Plaintiff argues that Defendants provide no "standard" for rest breaks and therefore have failed to pay Drivers for rest breaks.

As an initial matter, the Court is not persuaded that Defendants use a piece-rate plan. The cases Plaintiff relies upon involved compensation plans where the employers paid a fixed-rate amount for completing specified tasks. *See Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1253 (C.D. Cal. 2011) ("it is undisputed that the Pay Formula consists of a calculation based on the number of cases of product delivered, the number of miles driven on a delivery route, and the number of delivery stops"); *Reinhardt*, 869 F. Supp. 2d at 1161, 1168 (court ruling on 12(b)(6) motion; complaint alleged defendant employer paid a flat fee for each delivery "which is different from an hourly-wage method" and that "there are non-driving activities for which there is no compensation provided under any pay rubric"); *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 867 (2013) (employer-described "activity based compensation system" paid employees set amount based on miles driven, time of trip, pallets delivered, etc.).

Here, although Drivers are allocated set hours for each task, Drivers have the opportunity to correct the schedule with the actual hours worked if there are any discrepancies. This system is similar to when an employee is assigned a specific shift. For example if an employee is scheduled to work from 5 p.m. to 10 p.m., the default payment is for five hours of work. If the employee works beyond that time period, then he or she must notify the employer that more time was worked and that he or she needs to be compensated. Further, based upon the CBAs, Drivers are paid on varying hourly wages depending on the Driver's seniority. Therefore, although there may be

default hours for specific tasks, the Drivers are not paid a single rate based on the task itself, but rather his or her hourly wage rate for the number of hours worked.

To the extent there are discrepancies to this system, they cannot be resolved on a class-wide basis. For Plaintiff to rely upon showing a piece-rate system was in place to prove Defendants' liability under the minimum wage law, an individualized inquiry would have to be conducted to determine (1) whether Drivers actually worked more than the time allocated for each task on a given day; (2) whether Drivers filled out an exception form to indicate he or she has worked more hours; and (3) whether Drivers were paid for the extra time worked.

Regardless of whether Defendants use a piece-rate plan or hourly rate plan to pay Drivers, an individualized inquiry is also necessary to determine if Defendants in fact did not pay Drivers for rest breaks. Defendants argue that common issues will not predominate because, for example, the Court will need to determine whether any driver worked more than 3.5 hours on any given day; whether the route the driver drove that day allowed him/her to take a paid rest break; and whether the driver received any paid time for time that he/she did not actually work that day on account of the guaranteed minimum paid hours. (Opp'n 19.) The IWC Wage Order requires rest breaks for hours *actually* worked. In this case merely looking at Defendants' payroll records does not indicate whether Drivers were paid for their minimum guaranteed hours or hours actually worked. To the extent that Drivers actually worked less than their amount of guaranteed hours on a given day, an individual inquiry would be required. The Court agrees that individual issues will "overwhelm" whatever common issues might exist relating to Plaintiff's proposed minimum wages class and therefore **DENIES** certification of this proposed class.

b. Rest Break Class

Defendants argue that the absence of a written rest break policy does not establish a violation of California law. (Opp'n 13.) In *Brinker Restaurant Corp. v. Superior Court*, the California Supreme Court held that, when an employer "adopts a

uniform policy" that does not authorize or permit the proper number of rest breaks, "it has violated [California law] and is liable." 53 Cal. 4th 1004, 1033, 139 (2012). Since *Brinker*, the California courts have repeatedly found class certification to be appropriate where a uniform rest break policy was adopted that is facially inconsistent with California law. *See Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701, 726 (2013) (finding that plaintiff's theory of liability, namely that "[the defendant] violated wage and hour requirements by failing to adopt a policy authorizing and permitting meal and rest breaks to its technicians" was amenable to class treatment); *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220, 237 (2013) (reversing trial court's denial of certification of a class alleging rest break violations, holding that class-wide issues predominated because "[the defendant's] liability, if any, would arise upon a finding that its uniform rest break policy, or lack of policy, was unlawful"); *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("Here, plaintiffs' theory of recovery is based on [the defendant's] (uniform) lack of a rest and meal break policy and its (uniform) failure to authorize employees to take statutorily required rest and meal breaks. The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof.").

By contrast, at least two California federal district courts have denied class certification in actions alleging rest break violations based on a stated uniform policy. *See Cummings v. Starbucks Corp.*, No. 12-cv-06345-MWF(FFMx), 2014 WL 1379119, at *23 (C.D. Cal. March 24, 2014); *In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *10–11 (E.D. Cal. Nov. 27, 2012), adopted as final order by *In re Taco Bell Wage and Hour*, No. CV F 07-1314 LJO DLB, 2013 WL 28074, at *1 (E.D. Cal. Jan. 2, 2013). These courts denied certification due to the lack of a class-wide method of proving whether the offending policy was consistently applied to class members. *See Cummings*, 2014 WL 1379119, at *22 ("[T]o find that common issues predominate, the Court would have to rely on

the defective rest period policy to the exclusion of other evidence in the record."); *In re Taco Bell*, 2012 WL 5932833, at *10–11 (finding that rest break claim based on "facially invalid policy" should not be certified due to lack of "reliable evidence in . . . time cards"). Thus, according to the *Cummings* and *In re Taco Bell* courts, class treatment was inappropriate under Rule 23(b)(3) because a class action would devolve into a series of individualized inquiries as to who did and did not receive the appropriate amount of rest breaks, regardless of the content of the facially invalid policy.

In light of the requirement under Rule 23 that the Court consider the "likely difficulties in managing a class action" when deciding a motion for class certification, the Court finds *Cummings* and *Taco Bell* to be persuasive. In this case Plaintiff does not argue that Defendants' rest break policy is facially illegal; only that no policy exists. Regardless of whether a legal policy exists or not, substantial manageability problems remain regarding proof of whether a policy was actually implemented. *Cf. Abdullah v. U.S. Security Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) ("[I]t is an abuse of discretion for the district court to rely on uniform policies 'to the near exclusion of other relevant factors touching on predominance.'"(citation omitted)).

Plaintiff has not proffered a viable method of determining when (or if) a particular Driver took a rest break on a particular day, short of obtaining testimony regarding each Driver at each location. The parties agree that rest breaks were not recorded on employees' paychecks and the parties have provided conflicting declarations as to whether rest breaks were taken. (*See generally*, ECF No. 38, Exs. 60–82 (declarations confirming that drivers understand they have the right to take rest breaks and do so).) The Court is therefore left without a method of establishing by common proof when rest breaks were or were not taken by members of the class. Thus, Plaintiff has not proffered a viable class-wide method of showing whether any rest break policy was actually implemented. *Ordonez v. Radio Shack, Inc.*, No. 2:10-CV-07060-CAS, 2014 WL 4180958, at *6 (C.D. Cal. Aug. 15, 2014). This sort of

individualized inquiry, unassisted by wage statements or similar data, would render a class unmanageable. *Id.*

In reaching this conclusion, the Court is mindful of the fact that "damages determinations are individual in nearly all wage-and-hour class actions," and that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *See Leyva v. Medline Indus., Inc*., 716 F.3d 510, 513 (9th Cir. 2013). However, the manageability problem in the present case goes beyond individualized damages. Here, the issue is whether class-wide methods of proof exist to show that California law was actually violated. *Ordonez*, 2014 WL 4180958, at *6. If class-wide proof of violations were available, the fact that class members' damages varied would not present an obstacle to class certification because computerized analysis of such records could easily calculate each class member's damages. *Id*. Indeed, in *Leyva*, the Ninth Circuit noted that the defendant's "computerized payroll and time-keeping databases would enable the court to accurately calculate damages and related penalties for each claim." *Id*. The court therefore concluded that "damages could be feasibly and efficiently calculated once common liability questions are adjudicated." *Id*. Here, by contrast, no such records are available. It is this absence of records that are easily aggregated and analyzed that presents an insurmountable manageability concern. *Ordonez*, 2014 WL 4180958, at *6. For this reason, the Court **DENIES** class certification for the rest break class.

c. Wage Statement Class and Sub-classes

Employers must include certain information with paychecks, including, for example, wages earned, hours worked, all deductions, the employer's name and address, and all applicable hourly rates. Cal. Lab. Code § 226(a). Relevant to this case each wage statement must state "(3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis . . . (6) the inclusive dates of the period for which the employee is paid . . . ." *Id*. Plaintiff alleges the Defendants did not include (1) premium pay for rest breaks; (2) piece-rate

information; and (3) the inclusive dates of each pay period. California law requires only a "very modest showing" of injury in a claim under this provision of the California Labor Code. *Jaimez v. DAIOHS USA, Inc*., 181 Cal. App. 4th 1286, 1306 (2010); *see also Escano v. Kindred Healthcare Operating Co., Inc*., No. 09–04778, 2013 WL 816146, at *11 (C.D. Cal. Mar. 3, 2013) ("[T]he injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute.").

In support of the proposed wage statement class, Plaintiff presents wage statements of three former employees: (1) several earning statements of Imelda Vasquez ranging from August 2012 to January 2013 (Vasquez Decl., Ex. B); (2) a sample earning statement from September 2012 (Addison Decl., Ex. A); and (3) an earning statement of Robert Albert from December 2009 (Robert Decl., Ex. A). Defendants argue that only the Albert wage statement is a valid wage statement. (Opp'n 16.) The statements submitted by Vasquez and Addison are actually reports generated from FGA's payroll system. (Vogt Decl. 3.) Defendant further argues that since the only authentic wage statement is from December 2009, it is irrelevant since the wage class begins in May 2012. (Opp'n 16.)

Regardless of whether the wage statements are authentic or not, Plaintiff has not provided sufficient evidence to allow certification of wage statement class. The Albert wage statement pre-dates the class period and therefore is irrelevant for purposes of this motion. Addison was terminated in 2010 and therefore his employment pre-dates the wage statement class as well. The earning statement attached to Addison's declaration is admittedly not his, although he claims that it is an accurate sample. (Addison Decl. ¶ 4.) Again, the Court finds the weight of this evidence weak. Therefore, the only relevant evidence is Vasquez's wage statements. Because Plaintiff has only shown her own non-compliant wage statements, she has not met her burden for proving there is a common class-wide injury. *See Pena v. Taylor*

*Farms Pacific, Inc.*, No. 2:13-cv-012820-KJM-AC, 2015 WL 546024, at *26 (E.D. Cal. Feb. 10, 2015.) To the extent that Drivers received non-compliant wage statements during the relevant time period, an individual inquiry is necessary to see which wage statements did not comply and if any complied after Defendants contacted ADP about the error. Further, Because Plaintiff bears the burden to show common issues exist and predominate, certification of the wage statement class is **DENIED**.

As to Plaintiff's piece-rate wage statement subclass and derivative wage statement subclass, the Court also **DENIES** certification. Having found that the Plaintiff has not shown Defendants pay Drivers by a piece-rate plan and individual issues predominate the minimum wage class and rest break class, the wage statement sub-classes also fail for the same reasons.

*2. Superiority*

The Court therefore concludes that Plaintiff failed to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members" for all the proposed classes. Fed. R. Civ. P. 23(b)(3). As such, the Court does not need to reach the issue of superiority.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Class Certification. (ECF No. 34.)

**IT IS SO ORDERED.**

March 12, 2015

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**